# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Cognex Corporation,

      Plaintiff,

v.

VCode Holdings, Inc.,
VData LLC,
Acacia Research Corporation
d/b/a Acacia Technologies Group,
TechSearch, LLC,
Veritec Inc.,

      Defendants.

Civil No. 06-1040 (JNE-JJG)


**REPORT**
**AND**
**RECOMMENDATION**

---

This matter came before the undersigned for a hearing on May 26, 2006 on defendants' motion to dismiss (Doc. No. 9). Thomas C. O'Konski, Esq., and Peter G. Nikolai, Esq., appeared on behalf of plaintiff Cognex Corporation (Cognex). Jonathan T. Suder, Esq., and S. Jamal Faleel, Esq., appeared on behalf the defendants. The defendants are moving to dismiss for lack of personal and subject matter jurisdiction. The matter is assigned to this Court for a report and recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1(c).

## I.    BACKGROUND

This action arises out of a patent dispute between plaintiff Cognex Corporation (Cognex) and five defendants. The defendants allegedly own or control the '524 patent, which teaches a device for two-dimensional bar codes. Like ordinary bar codes, these are used for tracking merchandise. Cognex makes devices that read and interpret these codes; it has several clients that have purchased these devices.

Some of Cognex's clients were contacted by Acacia Technologies Group, which consists of subsidiaries of defendant Acacia Research Corporation (Acacia Research).  The subsidiaries include defendants VData LLC (VData) and VCode Holdings, Inc. (VCode).  By letters in January 2006, Acacia Technologies Group contacted Cognex's clients, requesting that they purchase licenses for the patent.  (*See* Decl. of K. Gannon, Aug. 17, 2006, Exh. 1 (Depo. of R. Berman, Aug. 9, 2006 at 33); Aff. of L. Mitchell, Apr. 3, 2006, Exhs. 2, 3 (Letters of T. DeRaimo, Jan. 4, 2006, Jan. 9, 2006).)

Clients who refused were sued by VCode and VData for patent infringement.  (*See, e.g.,* Aff. of J. Capone, May 5, 2006, Exhs. P, Q (Compls.).)  In contracts with its clients, Cognex has agreed to indemnify some of its clients for patent liability arising out of the use of its products.  At least one of these clients, in response to litigation by VCode and VData, has demanded indemnification.  (*See* Aff. of J. Testa, May 4, 2006 at 3-4; Aff. of J. Capone, May 5, 2006, Exh. B (Letter of M. LeHocky, Mar. 10, 2006).)  Cognex claims this litigation has affected its ability to solicit and retain customers.

Because of this concern, Cognex brings this action for declaratory judgment and seeks a declaration on the validity of the patent.  The defendants here move to dismiss.  All of the defendants challenge subject matter jurisdiction, and two of the defendants also challenge personal jurisdiction.  The parties have since agreed that there is no basis for jurisdiction over defendant TechSearch, LLC, and so the following discussion is limited to the remaining four defendants.

## II.   DISCUSSION

### A.   Subject Matter Jurisdiction: Controversy and Declaratory Judgment

The defendants principally argue that Cognex has not alleged an actual controversy that will allow subject matter jurisdiction over an action for declaratory judgment.  Because the issue involves  a

substantial question of patent law, it is governed by the law of the Federal Circuit.  *See U.S. Valves, Inc. v. Dray*, 212 F.3d 1368, 1372 (Fed. Cir. 2000).

Consistent with the constitutional requirement that federal courts only consider a "case or controversy," the Declaratory Judgment Act requires an "actual controversy" before a court may declare the legal relationships between the parties.  28 U.S.C. § 2201(a); *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 810 (Fed. Cir. 1996).  An actual controversy is a definite and concrete dispute that justifies an immediate determination of the parties' legal rights.  *Medimmune, Inc. v. Genentech, Inc.*, 427 F.3d 958, 964 (Fed. Cir. 2005) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937)).  Because the existence of an actual controversy is a question of subject matter jurisdiction, this issue may supply the basis for a motion to dismiss.  *Gen-Probe, Inc. v. Vysis, Inc.*, 359 F.3d 1376, 1379 (Fed. Cir. 2004).

The nonmoving party has the burden to supply facts that support subject matter jurisdiction.  If the moving party argues that the complaint lacks sufficient allegations for jurisdiction, then the allegations in the complaint are taken as true, with reasonable inferences for the nonmoving party.  But if the moving party challenges the allegations underlying jurisdiction, the court may look beyond the allegations in the complaint and make its own findings on the record.  *Cedars-Sinai Medical Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993).

Two elements are required for a plaintiff to establish an actual controversy in patent dispute.  The first element is the existence of an explicit threat, or other action by the defendant, which creates a reasonable apprehension in the plaintiff of suit by the defendant for patent infringement.  The second element is whether the plaintiff could be engaged in, or has taken concrete steps toward, the use or manufacture of the patented device.  *DuPont Merck Pharm. Co. v. Bristol-Myers Squibb Co.*, 62 F.3d

3

1397, 1401 (Fed. Cir. 1995). Should the plaintiff establish an actual controversy, a court then has discretion to exercise or to decline jurisdiction. *Electronics for Imaging, Inc. v. Doyle*, 394 F.3d 1341, 1345 (Fed. Cir. 2005).

### 1.      Reasonable Apprehension of Suit

The first element, reasonable apprehension of suit, may be established by an express threat of litigation by the defendant. In the absence of an express threat, a reasonable apprehension may also be inferred from the totality of the circumstances. To determine whether an apprehension of suit is reasonable, the facts are viewed from the point of an objective observer. *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 836 F.2d 731, 736 (Fed. Cir. 1988).

### a.      Objective Basis for Apprehension

Asking another party to purchase a license for a patent, or subsequent negotiations toward licensing, is not sufficient to create a reasonable apprehension of suit. *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 888 (Fed. Cir. 1992). But reasonable apprehension may be signaled by a breakdown in licensing negotiations, *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053 (Fed. Cir. 1995), or where a party makes an unqualified statement that it will resort to court action, *Vanguard Research, Inc. v. Peat, Inc.*, 304 F.3d 1249, 1255 (Fed. Cir. 2002).

The Federal Circuit has often emphasized that the intention to enforce and vindicate patent rights, by itself, it not sufficient to create a reasonable apprehension of suit. In *EMC Corp. v. Norand Corp.*, the court explained,

> No patent owner with any sense would open negotiations by assuring his opposite party that he does not intend to enforce his patent rights under the circumstances. The threat of enforcement . . . is the entire source of

the patentee's bargaining power.

89 F.3d 807, 811 (Fed. Cir. 1996).  The defendants argue in part that their communications do not provide an objective basis for reasonable apprehension of suit, and instead are only pursuant to their efforts to negotiate licenses with Cognex's clients.

To establish reasonable apprehension, Cognex makes the following allegations.  VCode and VData commenced suit for patent infringement against four of Cognex's clients in the period from October 2004 through October 2005.  (Aff. of J. Capone, May 5, 2006, Exhs. P, Q, R, S (Compls.).)  An officer of Cognex was told, by an officer of defendant Veritec Inc. (Veritec) in November 2005, to obtain a license or face litigation.  (Aff. of J. Testa, May 4, 2006 at 1-2.)  Acacia Technologies Group then sent letters to approximately seventy of Cognex's clients in January 2006, asserting that their patents were being infringed.  (*See* Aff. of L. Mitchell, Apr. 4, 2006, Exhs. 2, 3 (Letters of T. DeRaimo, Jan. 4, 2006, Jan. 9, 2006).)  At least one of the clients has since demanded that Cognex indemnify its litigation of the dispute.  (Aff. of J. Testa, May 4, 2006 at 4; Aff. of J. Capone, May 5, 2006, Exh. B (Letter of M. LeHocky, Mar. 10, 2006).)

The allegations of Cognex may be addressed as three separate scenarios: (1) the litigation activity of VCode and VData; (2) the communication between Cognex and Veritec in November 2005; and (3) the January 2006 letters from Acacia Technologies Group.  For reasons that become evident later, it is simplest to address these scenarios in reverse chronological order.

Two of the January 2006 letters are in the record, and except for the recipients, the texts of the letters are identical.  It may be inferred that all the January 2006 letters are identical and that Acacia Technologies Group was the only sender.  The letters state in relevant part,

We believe that your company's use of [the two-dimensional bar code] infringes the '524 Patent.

[A named law firm] serves as our litigation counsel in patent infringement lawsuits that are pending . . . to enforce our rights under the '524 Patent. We have elected to bring the licensing efforts for the '524 Patent in-house in an attempt to reach an amicable solution with you.

Over the years, we have been very successful in resolving our patent matters through execution of mutually acceptable license agreements. . . .   Acacia is prepared to license the '522 Patent to your company at favorable rates during this stage of our program. . . .

Because of our significant experience in these matters, we are very familiar with the process of each company's review of infringement allegations . . . .   While outside counsel often suggests the immediate expenditure of significant (billable) time . . . these steps have proven to be extraordinarily inefficient . . . . [W]e would propose that we schedule a telephone call will all interested parties to answer your questions, discuss potential licensing terms, and provide you any additional information that you may need to determine how to best move forward with this matter.   We assure you that this is the most likely method to achieve an amicable resolution of this matter and prevent the rapid <u>incurrence</u> of unnecessary legal fees.

(Aff. of L. Mitchell, Apr. 3, 2006, Exhs. 2, 3 (Letters of T. DeRaimo) (emphasis in text).)   The letters forcefully state an intention to protect and vindicate patent rights.   But it is plain that the letters invite recipients to enter negotiations for a license.   Because the letters do not threaten litigation, they do not supply a basis for reasonable apprehension of suit.[1]

---

[1] Cognex argues that the letters, though sent by Acacia Technologies Group, are attributable to Acacia Research.   The defendants counter that the letters were directed by VCode and VData, in their capacity as member entities of Acacia Technologies Group.   Based on the conclusion that the letters do not create reasonable apprehension of suit, this analysis does not reach the question about which defendants are responsible for these communications.

In its communication with Veritec in November 2005, Cognex alleges an officer of Veritec specifically threatened litigation.  (Aff. of J. Testa, May 4, 2006 at 2-3.)  Veritec denies any threats occurred and claims its communications were pursuant to ordinary negotiations.  (*See* Aff. of V. Tran, May 12, 2006 at 1-2.)

When only the comments of their officers are examined, there is little more than a swearing contest between Cognex and Veritec.  But the record elsewhere indicates that VCode, a subsidiary of Veritec, was bringing patent litigation against Cognex's clients.  (*See* Aff. of J. Capone, May 5, 2006, Exhs. K (Press Release of Veritec, Apr. 14, 2005), S (Compl. of Oct. 3, 2005).)  Under these circumstances, a reasonable observer would have reason to believe that VCode and Veritec were operating in concert, making Cognex's claims more credible.  The November 2005 communication, therefore, supplies a basis for reasonable apprehension of suit from Veritec.

What remains is the litigation history of VCode and VData.  Because they have commenced suit against at least four of Cognex's clients, other clients may also have reasonable apprehension of suit.  The question here, however, is whether Cognex may have reasonable apprehension of suit due to litigation against its clients.

### b.	Reasonable Apprehension by Vendor

This argument is anticipated by three cases from the Federal Circuit, in which it discusses circumstances where a vendor, not the direct object of threatened litigation, may nevertheless have apprehension of suit.

*Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.* arose out of the licensing of a water processing technology by Arrowhead.  846 F.2d 731 (Fed. Cir. 1988).  Ecolochem sent a letter to one

of Arrowhead's clients, alleging that Arrowhead was infringing one of Ecolochem's patents. The letter demanded that the client discontinue use of Arrowhead's technology or it would "not hesitate[] to protect its patent rights whenever appropriate." *Id.* at 733. The court ruled that, even though Ecolochem did not communicate directly with Arrowhead, the letter created reasonable apprehension of suit in Arrowhead. *Id.* at 737-38.

In *BP Chemicals Ltd. v. Union Carbide Corp.*, BP Chemical licensed a chemical processing technology to its clients and entered an indemnity agreement with those clients. 4 F.3d 975, 977 (Fed. Cir. 1993). As part of its efforts to sell a competing technology, Union Carbide commenced patent licensing negotiations with BP Chemical's clients. *Id.* It was uncontested on appeal that the process licensed by BP Chemical did not infringe the process offered by Union Carbide. *See id.* at 980. BP Chemical then brought action for declaratory judgment against Union Carbide. *Id.* at 977-78.

Reiterating the rule of *Arrowhead*, the court observed that a defendant need not direct its actions at a plaintiff to create reasonable apprehension of suit in that plaintiff. *Id.* at 979-80. Though BP Chemicals had an indemnity agreement with its clients, the agreement was not implicated when its clients were offered another process by Union Carbide. *Id.* at 981. Thus BP Chemicals lacked reasonable apprehension of suit. *Id.* at 980.

A similar scenario was presented in *Microchip Technology v. Chamberlain Group, Inc.* 441 F.3d 936 (Fed. Cir. 2006). Microchip licensed a microprocessor technology to several of its clients but did not enter an indemnity agreement with them. Chamberlain afterwards accused Microchip of infringement, and they executed a covenant not to sue one another. With the covenant in place, Chamberlain pursued Microchip's clients, demanding licenses for the technology they received from

Microchip.  Microchip responded with an action for declaratory judgment against Chamberlain.  *Id.* at 938-40.

The court determined that, because the parties had a covenant not to sue, Microchip had no reasonable apprehension of suit.  *Id.* at 943.[2]  It added in dicta that Microchip had not

> established a legal relationship between it and a customer that had a legal interest adverse to Chamberlain, such as the existence of an indemnity agreement between Microchip and its customer.

*Id.*

Unlike the cases described above, here VCode and VData have moved beyond threats of suit and have commenced litigation against several of Cognex's clients.  Though this litigation does not directly accuse Cognex of infringement, the parties do not contest that Cognex's clients acquired the bar code scanners, the means of infringement, from Cognex.  And Cognex has executed agreements with some of its clients to indemnify them for patent infringement.  (Aff. of J. Testa, May 4, 2006, at 3-4.)

These circumstances are arguably more serious than in *Arrowhead*, since some of Cognex's clients are defending against patent litigation.  And furthermore, both *BP Chemical* and *Microchip Technology* suggest that where a client is threatened with patent litigation, and the vendor has agreed to

---

[2] At the motion hearing, the parties devoted substantial argument to the decision of the Northern District of Illinois in *Dow Chemical Co. v. Viskase Corp.*  892 F.Supp. 991 (N.D.Ill. 1995).  The defendants argue that a vendor will only have reasonable apprehension of suit, due to action against its clients, when those clients are "merely a conduit of the manufacturer."  This phrase does not form the primary basis for the court's decision and is taken from an unpublished case.  *See id.* at 995 (quoting *Viking Injector Co. v. Chemtron, Inc.*, No. 93-791, 1993 WL 625543 at *3 (M.D.Pa. 1993)).  Cognex counters that, when the court held there was no reasonable apprehension of suit, it was because the vendor had executed a covenant not to sue with the patent holder.  *Id.* at 994.  A similar scenario is discussed more fully in *Microchip Technology*, and so that case is discussed here.

indemnify that client for infringement, the vendor has a reasonable apprehension of suit.  Given the litigation against its clients, as well as its agreements to indemnify its clients, Cognex establishes reasonable apprehension of suit from VCode and VData.

The defendants raise two potential obstacles to this conclusion.  One is that the record does not include any contract in which Cognex agrees to indemnify its clients.  Although the defendants are correct on this point, Cognex alleges that such agreements exist, and it has also submitted a letter from one of its clients, where that client demands indemnification from Cognex.  (*See* Aff. of J. Testa, May 4, 2006, at 3-4; Aff. of J. Capone, May 5, 2006, Exh. B (Letter of M. LeHocky, Mar. 10, 2006).)  This evidence amply supports the conclusion that Cognex had agreed to indemnify its clients.

Assuming that an indemnity agreement is in place, the defendants also distinguish between a right to indemnity and actual indemnification.  They argue that an obligation to indemnify a client cannot create reasonable apprehension of suit.  Instead they appear to propose a de facto approach, in which the client must have actually demanded indemnification.  Notwithstanding the merits of the defendants' arguments, the record reflects that such a demand was made against Cognex here.

But it is also notable that, when examining whether there is reasonable apprehension of suit, the Federal Circuit does not distinguish between a right to indemnity and actual indemnification.  It rather focuses on the legal relationship of the parties.  The critical inquiry is not whether a client has actually demanded indemnification, but whether a vendor has agreed to indemnify the client.  *See Microchip Technology*, 441 F.3d at 943.  Because the existence of an indemnity agreement can be inferred here, the defendants' arguments are unavailing.

### c.   Legal Defects Undermining Apprehension

The defendants interpose several arguments suggesting they cannot proceed with suit for patent infringement as a matter of law, and therefore, Cognex cannot have reasonable apprehension of suit. These arguments appear to invite an analysis that Cognex cannot proceed because the defendants would fail to state a claim, similar to the standard required for a motion to dismiss under Rule 12(b)(6). But the actual standard here is whether such legal defects, known to an objective observer, would undermine reasonable apprehension of suit in a plaintiff.

Some defendants assert that they do not have the right to sue, and therefore, Cognex lacks reasonable apprehension of suit from them. As the prior analysis shows, Cognex only has reasonable apprehension of suit from VCode, VData, and Veritec. VCode and VData have already exercised their right to sue. Veritec is a purported title owner of the patent that has granted exclusive licenses, including the right to sue, to other entities. (Aff. of J. Capone, May 5, 2006, Exhs. O (Abstract of Title, May 2, 2006); K (Press Release of Veritec, Apr. 14, 2005).) Because a reasonable observer may infer these defendants have the right to sue, Cognex has reasonable apprehension of suit from them. *See Sicom Systems, Ltd. v. Agilent Techs., Inc.*, 427 F.2d 971, 980 (Fed. Cir. 2005) (discussing standing to bring suit for patent infringement); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995) (same).

The defendants also contend that, because their actions only create reasonable apprehension of suit for infringement of the '524 patent, Cognex cannot proceed with a declaratory judgment on its parent, the '078 patent. Cognex counters that the two patents are tied together by a terminal disclaimer, and so reasonable apprehension of suit about one will cause the same for the other.

11

This issue derives from the principle that an inventor cannot obtain more than one patent for the same invention.  35 U.S.C. § 101.  If an inventor were able to do so, the latter patent would improperly extent the period of the patent monopoly.  This practice is referred to as "nonstatutory double patenting" or "obviousness-type double patenting."  *See Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1337 (Fed. Cir. 2004); *Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1377 (Fed. Cir. 2003).

When obviousness-type double patenting is alleged in the course of patent prosecution, the application may be cured by a terminal disclaimer.  By providing that the successor patent terminates at the same time as the parent patent, this disclaimer prevents any possibility of double patenting.  *Geneva Pharms., Inc.*, 349 F.3d at 1377.  Though a terminal disclaimer ties a successor patent to its parent, this relationship does not merge the patents.  *See generally* 3A *Chisum on Patents*, § 9.04[5] (2006).  And the filing of a terminal disclaimer does not concede that the latter patent is invalid for obviousness-type double patenting.  *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 942 (Fed. Cir. 1992).

Although the Federal Circuit has yet to reach the question, two district courts have concluded in published decisions that the relationship between a patent and its parent is not sufficient to supply reasonable apprehension of suit on the parent.  *See O'Hagins, Inc. v. M5 Steel Mfg., Inc.*, 276 F.Supp.2d 1020, 1025 (N.D.Cal. 2003); *Hoffman-La Roche Ins. v. Genpharm Inc.*, 50 F.Supp.2d 367, 370, 376-77 (D.N.J. 1999).

At the time that the complaint was filed, all the litigation activities by VCode and VData involved the '524 patent.[3]  Cognex has not shown that this litigation, or other communications from the defendants, involve the '078 patent.  It relies on the fact that these patents are tied together by a terminal disclaimer, which by itself cannot supply reasonable apprehension of suit over the '078 patent.  Cognex may only seek a declaratory judgment regarding the '524 patent, and the defendants prevail on their motion to dismiss claims respecting the '078 patent.

### 2.       Activity Constituting Infringement

Having determined that Cognex has reasonable apprehension of suit from VCode, VData, and Veritec, the analysis now turns to the remaining element necessary to establish a controversy.  Here the inquiry is whether the plaintiff could be engaged in activity that constitutes infringement.

Where a vendor sells a product, and its purchasers can only use the product for activities that directly infringe a patent, the vendor could be liable for inducing the infringement.  *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1318 (Fed. Cir. 2003).  Because the inducing party is liable in the same manner as the direct infringer, 35 U.S.C. § 271(b), such activity is sufficient to demonstrate that the vendor could be engaged in infringement, *Arrowhead Indus. Water, Inc.*, 846 F.2d at 736.

---

[3] In supplemental briefing, Cognex alleges that by a complaint filed on May 27, 2006, VCode and VData brought suit for infringement of both the '078 and '524 patents.  Because of this new development, Cognex argues that the two patents are linked and thus suits for infringement of the '524 patent cause reasonable apprehension of suit for infringement of the '078 patent.

Even if these contentions are correct, the existence of subject matter jurisdiction must be evaluated according to the facts existing at the time a complaint is filed.  *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993).  Because the instant litigation was commenced on March 13, 2006, it is inappropriate to consider subsequent events when determining subject matter jurisdiction.  As a result, the supplemental allegations of Cognex are not relevant here.

The parties do not contest that, when Cognex sells scanners, its clients must use the two-dimensional bar codes that are the subject of the disputed patent. Thus Cognex could be engaged in inducing infringement by its clients.

Due to the litigation activity of VCode and VData against its clients and indemnitees, as well as the communications of Veritec with it directly, Cognex has reasonable apprehension of suit on the '524 patent. And through its sale of products that require use of the patented technology, it could be liable for inducing infringement by its clients. Thus Cognex has shown an actual controversy and established subject matter jurisdiction, allowing it to seek action for declaratory judgment on the validity of the '524 patent.

### 3. Discretion to Decline Subject Matter Jurisdiction

Once a court determines there is subject matter jurisdiction over an action for declaratory judgment, the court has discretion to exercise or decline jurisdiction. *Electronics for Imaging, Inc. v. Doyle*, 394 F.3d 1341, 1345 (Fed. Cir. 2005). A court may only decline jurisdiction for well-founded reasons. Some are economic, such as the need to define the legal interests of the parties, or to prevent undue losses to the wronged party. Other reasons are equitable, such as whether the parties may be expected to resolve their dispute without court intervention, or whether a party has engaged in unfair tactics during out-of-court negotiations. *EMC Corp. v. Norand Corp.*, 89 F.2d 807, 813-14 (Fed. Cir. 1996). A court cannot, however, inquire into the underlying merits of the action itself. *Electronics for Imaging, Inc.*, 394 F.3d at 1346.

The current litigation poses several issues about the validity of the '524 patent. Until these questions are resolved, Cognex is likely to suffer substantial losses. The record suggests that, no later than November 2005, the parties attempted to resolve their differences out of court. Now that some defendants

are proceeding with litigation against Cognex's clients, the parties are not likely to be amenable to further negotiations out of court. Taken together, these factors favor the continued exercise of jurisdiction in this matter.

### B.      Disregarding Business Entity

The previous analysis indicates that Cognex may only proceed with its action for declaratory judgment against VCode, VData, and Veritec. Anticipating this outcome, Cognex argues that VData is controlled by the remaining defendant, Acacia Research, and so it should remain a party to this action. To support this argument, Cognex alleges VData is an alter ego of Acacia Research.

Questions of business entity are controlled by law of the jurisdiction where organization is executed. *See In re World Vision Entertainment*, 275 B.R. 461, 462 (M.D.Fla. 2002); *Keller Sys., Inc. v. Transp. Int'l Pool, Inc.*, 172 F.Supp.2d 992, 999-1000 (N.D.Ill. 2001); *see also* Restatement (Second) Conflicts of Law § 307 (1971). VData is an Illinois limited liability company, and so the law of that state is controlling here.

Like most states, Illinois law will impute the actions of a subsidiary to a parent where the subsidiary is an alter ego of the parent. The parent must exercise such control over the subsidiary that the two entities are indistinguishable. The actions of the subsidiary will then be imputed to the parent where necessary to prevent fraud or injustice. *In re Rehabilitation of Centaur Ins. Co.*, 632 N.E.2d 1015, 1017-18 (Ill. 1994).

To determine whether a subsidiary is an alter ego, the parties advance a multiple-factor test first adopted by the Tenth Circuit in *Taylor v. Standard Gas & Elec. Co.* 96 F.2d 693, 704-05 (10th Cir. 1938) (quoting Frederick J. Powell, *Parent and Subsidiary Corporations* §§ 5, 6 (1931)). That test

examines several factors, including but not limited to whether the subsidiary (1) is adequately capitalized; (2) issues stock; (3) observes corporate formalities; (4) pays dividends; (5) lacks functioning officers or directors; (6) maintains corporate records; (7) commingles funds with its parent; (8) diverts assets from its parent to evade creditors; (9) fails to maintain an arm's-length relationship with related entities; or (10) is a facade for the interests of dominant stakeholders. *See CM Corp. v. Oberer Devel. Co.*, 631 F.2d 536, 538-39 (7th Cir. 1980); *United States v. Advance Machine Co.*, 547 F.Supp. 1085, 1093 (D.Minn. 1982).

This test is infrequently employed by Illinois courts, and there is little indication that its use is currently favored. *Compare Fontana v. TLD Builders, Inc.*, 840 N.E.2d 767, 778-79 (Ill. Ct. App. 2005) (considering individual factors), *with Main Bank of Chicago v. Baker*, 427 N.E.2d 94, 101-02 (Ill. 1983) *and Larson v. CSX Transp., Inc.*, 835 N.E.2d 138, 145-46 (Ill. Ct. App. 2005).

Moreover, this test is premised on the assumption that the subsidiary is a corporation that is subject to certain corporate formalities. At the time that the test was developed, the law of business organizations had yet to recognize statutory limited liability companies. *See* J. William Callison & Maureen A. Sullivan, *Limited Liability Companies* § 1:5 (2006). And unlike a corporation, an Illinois limited liability company does not issue stock, does not appoint officers, and is not required to issue annual reports. *See generally* 805 Ill. Comp. Stat. 180/10, /13, /30. Though the proposed multi-factor test is germane to the extent it examines control by a parent entity, the underlying focus is whether the parent exercises such control that the parent and subsidiary are indistinguishable.

After jurisdictional discovery in this matter, the record shows the following. VData is wholly owned by Acacia Global Acquisitions Corporation (Acacia Acquisitions). It has no employees of its own. All of

16

its affairs are handled through Acacia Acquisitions, its sole member. (*See* Decl. of K. Gannon, Aug. 17, 2006, Exhs. 1 (Depo. of R. Berman, Aug. 9, 2006 at 13, 21), 8 (Settlement Agreements).) VData has substantial capital reserves, but it has yet to pay any dividends to either Acacia Research or Acacia Acquisitions. The revenues of VData are reported in consolidated tax returns by Acacia Research. (*See* Decl. of L. Mitchell, Aug. 25, 2006, Exhs. 1 (Depo. of R. Berman, Aug. 9, 2006 at 30), 8 (Statement of July 10, 2006).)

Acacia Acquisitions is a holding corporation wholly owned by Acacia Research. It has no assets other than its stakes in various subsidiaries. And the officers of Acacia Acquisitions are nearly identical to those for Acacia Research.[4] (*See* Decl. of K. Gannon, Aug. 17, 2006, Exhs. 1 (Depo. of R. Berman, Aug. 9, 2006 at 13, 51), 6 (Action of Bd., Dec. 21, 2004); Decl. of L. Mitchell, Exh. 1 (Depo. of R. Berman, Aug. 9, 2006 at 69).)

The principal activity of VData is the enforcement of its patent rights. Only two identified persons are involved in its decisions about patent licensing and litigation. One is Robert Berman, general counsel and chief operations officer for both Acacia Research and Acacia Acquisitions. The other is Tisha

---

[4] At a motion hearing before this Court on September 11, 2006, the defendants represented that the officers of Acacia Research and those of Acacia Acquisitions are different persons with different roles. This representation, however, is not supported by the record. Paul Ryan is chief executive officer of both entities. (*Compare* Aff. of J. Capone, May 5, 2006, Exh. I (Press Release of Acacia Research, Sept. 30, 2005), *with* Decl. of K. Gannon, Aug. 17, 2006, Exh. 6 (Action of Bd., Dec. 21, 2004).) Though Robert Berman is sometimes represented as the executive vice president of Acacia Acquisitions, he has frequently represented himself as its chief operations officer, which is also his title with Acacia Research. (*Compare* Decl. of K. Gannon, Aug. 17, 2006, Exh. 1 (Depo. of R. Berman, Aug. 9, 2006 at 42), *with id.* Exhs. 6 (Action of Bd., Dec. 21, 2004), 8 (Settlement Agreements).) And Clayton Haynes is chief financial officer for both entities. (*Id.*, Exhs. 1 (Depo. of R. Berman, Aug. 9, 2006 at 40), 6 (Action of Bd., Dec. 21, 2004).)

DeRaimo, identified on the letterhead of Acacia Technologies Group as Vice President of Licensing, but who may evidently be employed by a separate entity, Acacia Employment Services Corporation.  (Decl. of K. Gannon, August 17, 2006, Exh. 1 (Depo. of R. Berman, Aug. 9, 2006 at 33); Decl. of L. Mitchell, Exh. 1 (Depo. of R. Berman,  Aug. 9, 2006 at 20, 23).)

Invitations to enter licensing negotiations are prepared and sent out by DeRaimo.  (*See* Aff. of L. Mitchell, Apr. 3, 2006, Exhs. 2, 3 (Letters of T. DeRaimo).)  If negotiations lead to a license or some other settlement, the agreement is executed by Berman.  The agreements indicate that Berman appears in his capacity as COO of Acacia Acquisitions, the "sole member" of VData.  (*See* Decl. of K. Gannon, Exh. 8 (Settlement Agreements).)

In two press releases issued by Acacia Research in the last year, it has announced that VData has settled patent litigation with other parties.  One release quotes Paul Ryan, the chairman and chief executive officer of Acacia Research, as saying, "We will continue to increase our licensing and enforcement efforts with this patented technology[.]"  (Aff. of J. Capone, May 5, 2006, Exhs. I (Press Release of Acacia Research, Sept. 30, 2005), J (Press Release of Acacia Research, Apr. 26, 2006).)  When later asked what entity made this statement, Berman asserted it was VData rather than Acacia Research.  (Decl. of K. Gannon, Aug. 17, 2006, Exh. 1 (Depo. of R. Berman, Aug. 9, 2006 at 87-88).)

To determine whether VData is an alter ego of Acacia Research, it is necessary to examine both the relationship between VData and Acacia Acquisitions and that between Acacia Acquisitions and Acacia Research.

Because no natural persons are part of VData, all its operational decisions are necessarily made by Acacia Acquisitions.  The officers of Acacia Acquisitions and Acacia Research are nearly identical and

they perform identical duties.  Through its press releases and consolidated tax returns, Acacia Research speaks on behalf of VData.

There is no reasonable way to tell when the officers of Acacia Research are acting in their capacity as officers of Acacia Acquisitions.  Because they are identical, they cannot represent the independent interests of VData, Acacia Research, and Acacia Acquisitions.  Put another way, it is impossible for the three entities to engage in arm's-length dealings with one another.  Under these circumstances, Acacia Research has such control over VData that the two are indistinguishable.

As a result, VData is an alter ego of Acacia Research, and the actions of VData may be imputed to Acacia Research.  Cognex may proceed with its action for declaratory judgment against Acacia Research.

### C.      Personal Jurisdiction

Acacia Research argues that, because it lacks sufficient contacts with the state of Minnesota, a court cannot exercise personal jurisdiction there.  Cognex counters that Acacia Research, through the activities of its subsidiares, has sufficient contacts for such jurisdiction.  Although this analysis is controlled by many of the same factual concerns as the preceding analysis of alter ego, there are  separate legal issues that merit further discussion.

To exercise jurisdiction over a nonresident defendant, a court must have personal jurisdiction over that defendant.  When examining personal jurisdiction in the context of patent litigation, the law of the Federal Circuit applies. *3D Systems, Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376 (Fed. Cir. 1998).  A court must examine whether service may be accomplished under the long-arm statute and whether that statutory authority comports with due process. *Breckenridge Pharm., Inc. v. Metabolite*

*Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006).  Because Minnesota's long-arm statute permits personal jurisdiction to the extent allowed by due process, only the limits of due process are relevant here. Minn. Stat. § 543.19; *Guinness Import Co. v. Mark VII Distributors, Inc.*, 153 F.3d 607, 614 (8th Cir. 1998).

Due process requires that, to establish personal jurisdiction, the defendant must have minimal contacts with the state, such that an action against the defendant will not violate traditional notions of fair play and justice.  Minimal contacts are present when, due to the activities of the defendant in connection with the forum state, the defendant may reasonably anticipate being haled into court there.  *Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002).

The plaintiff has the burden to present prima facie evidence of such contacts.  On a motion to dismiss for lack of personal jurisdiction, the evidence is viewed with all reasonable inferences taken in favor of the nonmoving party.  *Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003).

Two different analyses may be used for determining whether the defendant's contacts with the forum state establish personal jurisdiction.  Specific personal jurisdiction occurs when the plaintiff's action arises out of the defendant's contacts with the forum state.  General jurisdiction occurs when the plaintiff's action does not arise out of the defendant's contacts with the forum state, but the defendant otherwise has such continuous and systematic contacts to permit personal jurisdiction there.  *See Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200-01 (Fed. Cir. 2003).

In *Akro Corp. v. Luker*, the Federal Circuit supplied a three part standard for evaluating specific personal jurisdiction.  The first issue is whether the defendant has purposefully directed its activities at residents of the forum state.  Then the second issue is whether the litigation by the plaintiff arises out of

20

those activities.  If both of these substantive requirements are met, the court then decides whether the exercise of personal jurisdiction comports with fairness and substantial justice. 45 F.3d 1541, 1545 (Fed. Cir. 1995).

As the preceding analysis of alter ego demonstrates, Acacia Research purposefully directs activities in Minnesota through the litigation activity of VData.  Because the current litigation by Cognex arises out of these activities, it has established an appropriate basis for specific personal jurisdiction.  Given the frequent litigation of VData in Minnesota, it is fair and reasonable for Acacia to expect to be haled into court here.  It is suitable, therefore, to exercise personal jurisdiction.[5]

**D.      Case Management Concerns**

Cognex has previously demanded that the parties proceed with early discovery in accordance with Local Rule 26.1(f).  With the exception of jurisdictional discovery, this Court has stayed further discovery until the motion to dismiss is resolved.  Should the District Court adopt this report and recommendation, this Court further advises that the parties promptly hold a Rule 26(f) and proceed with formal discovery at that time.  This report and recommendation includes some directions that are intended to expedite the discovery process.

In its memorandum opposing the motion to dismiss, Cognex requests costs and attorney fees it incurred with connection with the motion, arguing that the defendants' motion is not supported by law.  As the foregoing analysis indicates, some of the defendants' arguments have merit and do not necessarily require sanctions.  More importantly, if a motion for such sanctions is not filed in accordance with Rule

---

[5] Because of this determination, it is not necessary to reach the question of whether there is general personal jurisdiction.

21

11(c), then it is an abuse of discretion to grant costs and attorney fees. *Norsyn, Inc. v. Desai*, 351 F.3d 825, 831 (8th Cir. 2003). So it is inappropriate to grant costs and attorney fees here.

## III.   CONCLUSION

Because Cognex has established an actual controversy with regard to the '524 patent, it is appropriate to exercise subject matter jurisdiction over its claims against VCode, VData, and Veritec. VData is an alter ego of Acacia Research, and therefore, the actions of VData also establish personal jurisdiction and subject matter jurisdiction over Acacia Research. Therefore, this Court concludes that the motion to dismiss should be handled accordingly.

## IV.   CONCLUSION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1.  The defendants' motion to dismiss (Doc. No. 9) be **GRANTED IN PART AND DENIED IN PART** in accordance with the terms of this report and recommendation.

2.  Pursuant to the representations of the parties, defendant TechSearch be dismissed from this action.

3.  All claims related to the '078 patent be **DISMISSED WITHOUT PREJUDICE.**

4.  No later than seven days after the order adopting this report and recommendation, the parties shall schedule a Rule 16(a) initial pretrial conference by contacting Mary Lenner, Judicial Assistant for Magistrate Judge Jeanne J. Graham, at (651) 848-1890.

5.  Until an initial pretrial conference is held, the parties shall make a good faith effort to carry out reasonable preliminary discovery.

6.      Cognex's application for costs and attorney fees be **DENIED.**

Dated this 13th day of September, 2006.                    s/Jeanne J. Graham

JEANNE J. GRAHAM
United States Magistrate Judge

**NOTICE**

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by October 3, 2006.  A party may respond to the objections within ten days after service.  Any objections or responses filed under this rule shall not exceed 3,500 words.  The District Court shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Eighth Circuit.  Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing to resolve all objections to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.