UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Cognex Corporation,

        Plaintiff,

v.                                                                  Civ. No. 06-1040 (JNE/JJG)
                                                                    ORDER
VCode Holdings, Inc., VData LLC,
Acacia Research Corporation, and
Veritec Inc.,

        Defendants.

      This patent lawsuit, concerning data matrix symbols and reader products, returns to the

Court on three motions filed by Cognex Corporation.  Cognex commenced this action against

VCode Holdings, Inc. (VCode), VData LLC, Acacia Research Corporation (Acacia), and Veritec

Inc., (collectively Defendants) on March 13, 2006, seeking a declaration of noninfringement of

U.S. Patent No. 5,612,524 (filed March 18, 1997) ('524 patent), and that the '524 patent was

invalid and unenforceable.  Cognex also asserted claims against Acacia for violation of the

Minnesota Uniform Deceptive Trade Practices Act (MDTPA), Minn. Stat. §§ 325D.43-.48

(2006), and for business defamation.  VCode and VData asserted a counterclaim against Cognex

alleging infringement of certain claims of the '524 patent.  On May 19, 2008, the Court issued an

Order (1) granting Cognex summary judgment on its invalidity and unenforceability claims; (2)

denying VCode and VData partial summary judgment on the issue of infringement of certain

asserted claims; (3) denying Acacia summary judgment on Cognex's business defamation claim;

and (4) granting Acacia summary judgment on Cognex's MDTPA claim.  *See Cognex Corp. v.*

*VCode Holdings, Inc.*, Civ. No. 06-1040, 2008 WL 2113661 (D. Minn. May 19, 2008) (May 19

Order).  The May 19 Order also granted the parties permission to file additional dispositive

motions relating to the remaining claims in the First Supplemental Complaint, which resulted in

the three motions now pending.  For the reasons set forth below, the Motion for Summary

Judgment on Count V of Plaintiff's First Supplemental Complaint/Defamation is denied; the

Motion for Leave to Amend the First Supplemental Complaint is granted in part and denied in

part, and the Motion to Declare this an Exceptional Case Pursuant to 35 U.S.C. § 285 is denied.

## I.      BACKGROUND

The United States Patent and Trademark Office (PTO) issued the '524 patent, titled

"Identification Symbol System and Method with Orientation Mechanism," on March 18, 1997.

The '524 patent issued from a continuation application and claims priority to U.S. Application

Ser. No. 07/125,616, filed on November 25, 1987, and now U.S. Patent No. 4,924,078 (issued

May 8, 1990) ('078 patent).  Veritec previously owned both the '078 and '524 patents.  Veritec

subsequently assigned the patents to VCode, which is a wholly-owned subsidiary of Veritec.  In

2003, VCode granted an exclusive license to VData in the patents, in exchange for receipt of a

certain percentage of the net profits and proceeds obtained by VData in the exploitation and

enforcement of the patents.  VData is a subsidiary of Acacia.

The '524 patent is directed to a symbol identification system that includes a computer-

readable two-dimensional data matrix symbol with an orientation mechanism that can be

attached or affixed to an object and a method and apparatus for capturing an image of the symbol

and identifying the object from the information in the symbol.  A two-dimensional data matrix

symbol represents an improvement over traditional bar codes in that it has much higher

information density and can contain significantly more data than a traditional bar code.  Also,

unlike a bar code, a two-dimensional data matrix symbol does not have a preferred scanning

direction and is capable of being read from various orientations.  Cognex manufactures and sells

products designed to capture and read two-dimensional data matrix symbols.

Cognex alleges Defendants improperly attempted to enforce the '524 patent extra-judicially by contacting Cognex's current and potential data matrix reader customers and threatening them with patent litigation unless they purchase a license under the '524 patent. Cognex claims these actions have affected its ability to solicit and retain customers. Cognex also alleges that after Cognex filed the instant lawsuit, individuals associated with Acacia told certain third parties that Cognex attempted to purchase patents from Veritec, including the '524 patent, for an eight-figure amount. Cognex contends these statements were false and defamatory, and that they harmed Cognex's reputation in the business community regarding its intentions and conduct of the legal proceedings of the instant lawsuit.

In the May 19 Order, the Court declared the claims of the '524 patent that VCode and VData alleged Cognex infringed invalid and the entire '524 patent unenforceable due to inequitable conduct by the patentees in the procurement of the '078 patent and the patentees' failure to sufficiently cure that conduct during the prosecution of the '524 patent. *See Cognex*, 2008 WL 2113661, at *23-24, 33. The Court also denied Acacia's motion for summary judgment on Cognex's business defamation claim after determining that genuine issues of material fact existed as to the veracity of the alleged defamatory statements made by Acacia. Nonetheless, Cognex now seeks summary judgment on its defamation claim, as well as leave to amend the First Supplemental Complaint to assert a claim for punitive damages. Cognex also seeks an award of attorney fees as the prevailing party on the patent claims.

## II.    DISCUSSION

### A.    Motion for summary judgment on business defamation claim

The Court first considers Cognex's motion for summary judgment on its business defamation claim against Acacia. Summary judgment is proper "if the pleadings, the discovery

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c); *see Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994). The

movant "bears the initial responsibility of informing the district court of the basis for its motion,"

and must identify "those portions of [the record] which it believes demonstrate the absence of a

genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the

movant satisfies its burden, the party opposing the motion must respond by submitting

evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ.

P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In

determining whether summary judgment is appropriate, a court must look at the record and any

inferences to be drawn from it in the light most favorable to the party opposing the motion.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Cognex asserts it is entitled to summary judgment because there is no genuine issue of

material fact that Acacia published false and defamatory statements about Cognex regarding its

interest in purchasing the '078 and '524 patents for a substantial sum and that the statements

harmed Cognex's business reputation and credibility in the business community. Specifically,

Cognex claims that after it commenced the present litigation, Acacia's Vice President of

Licensing, Tisha DeRaimo-Stender, informed at least two Cognex customers, whom Acacia

alleged infringed the '524 patent and who raised the instant lawsuit as a reason to decline or

defer taking a license under the '524 patent, that Cognex offered to buy the '078 and '524 patents

for "an eight-figure price." Cognex alleges DeRaimo-Stender also told at least one of the alleged

infringers that Veritec was in possession of a letter of intent evidencing Cognex's alleged offer to

purchase the patents. Cognex alleges that these statements were false and that Cognex never

offered to buy the patents from Veritec. Cognex claims the statements were made by Acacia for the specific purpose of deceiving the alleged infringers into believing that Cognex had no intention of fully pursuing the instant lawsuit and to fraudulently induce the alleged infringers to pay for a license fee under the '524 patent. Cognex claims these statements defamed Cognex because of their tendency to harm its reputation by lowering Cognex in the estimation of the business community in which it operates and by deterring third persons from associating or dealing with Cognex. Cognex also alleges the statements undermined its credibility in view of the published statements Cognex had made with respect to the invalidity and unenforceability of the '524 patent, and that Acacia's statements were calculated to prejudice Cognex's business and cast doubt on its professed loyalty to its customers.[1]

Under Minnesota law, a statement constitutes defamation if (1) it is communicated to someone other than the plaintiff, (2) it is false, and (3) it tends to harm the plaintiff's reputation and lower him in the estimation of the community. *See Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn. 1980).[2] Corporate plaintiffs stand on the same footing as individuals in defamation actions. *See Advanced Training Sys., Inc. v. Caswell Equip. Co.*, 352 N.W.2d 1, 10 (Minn. 1984). To recover, a corporation must show that a defendant's written statements directly tended to prejudice it in the conduct of its business or to deter third persons from dealing with it, and the corporation need not prove any special pecuniary damages to do so. *Id.*

---

[1]     Defendants correctly point out that Cognex includes allegations of false and defamatory statements it claims are attributable to Acacia in its motion for summary judgment that were not pleaded in the First Supplemental Complaint. Defamation claims must be pled with specificity. *See Glenn v. Daddy Rocks, Inc.*, 171 F. Supp. 2d 943, 947 (D. Minn. 2001); *Moreno v. Crookston Times Printing Co.*, 610 N.W.2d 321, 326 (Minn. 2000). The Court thus considers Cognex's motion for summary judgment only on the basis of the allegations specifically pleaded in the First Supplemental Complaint.

[2]     In the May 19 Order, the Court determined that Minnesota law applied to Cognex's business defamation claim. *See Cognex*, 2008 WL 2113661, at *35.

"Whether a defamatory meaning is conveyed is dependent upon how an ordinary person understands 'the language used in the light of surrounding circumstances.'" *Harman v. Heartland Food Co.*, 614 N.W.2d 236, 240 (Minn. Ct. App. 2000) (quoting *Gadach v. Benton County Co-op. Ass'n*, 53 N.W.2d 230, 232 (Minn. 1952)).  Upon review of the parties' latest submissions on this claim, the Court concludes that the factual dispute regarding the veracity of the statements made by Acacia representatives at the center of Cognex's business defamation claim remains.

According to the record, Veritec's CEO Van Tran testified in her deposition about her participation in what she thought were "serious" discussions in 2005 regarding the purchase of Veritec, including its patents, by Cognex.  The purchase of Veritec would include its patents. Cognex Vice President, Justin Testa, testified in his deposition that he had conversations with Tran in 2005 about Cognex's interest in buying Veritec for $11 million.  However, Testa testified that he told Tran that Cognex was not interested in purchasing Veritec.  Testa further testified that Tran asked if Cognex would provide a letter of intent for Veritec to use in its on-going bankruptcy proceedings, and that he told Tran that Cognex would not produce a letter of intent expressing such interest when it, in fact, had none.  However, according to Tran's testimony, the negotiations led to the drafting of a letter of intent that was delivered to Cognex for review.  Testa testified that Tran never provided any such letter to anyone at Cognex.  Tran testified that she subsequently told DeRaimo-Stender about the negotiations between Cognex and Veritec.  DeRaimo-Stender testified in her deposition that she relied on the information she received from Tran and did not independently verify its accuracy before sending the allegedly defamatory emails.

When there is a factual dispute, as there is here, the truth of defamatory statements is a factual issue to be decided by the jury. *Dunn v. Nat'l Beverage Corp.*, 729 N.W.2d 637, 652 (Minn. Ct. App. 2007) (citing *Lewis v. Equitable Life Assurance Soc'y*, 389 N.W.2d 876, 889 (Minn. 1986) (superseded by statute on other grounds)). Moreover, the factual dispute here centers on the credibility of the witnesses and the weight that their individual testimony deserves. While a jury might credit the testimony of Testa and disbelieve the testimony of Tran at trial, this is for the jury, not the court, to decide. *See Henderson v. Munn*, 439 F.3d 497, 503 (8th Cir. 2006) ("[I]t is not [the court's] function to remove the credibility assessment from the jury.") (Citation omitted); *Melvin v. Car-Freshener Corp.*, 453 F.3d 1000, 1004 (8th Cir. 2006) (Lay, J., dissenting) (indicating that where witness credibility will be determinative, "a jury, not the courts, should ultimately decide whether the plaintiff has proven [its] case"). Thus, the resolution of Cognex's business defamation claim is improper at the summary judgment stage of these proceedings. Therefore, Cognex's request for summary judgment is denied.

**B.    Motion to amend complaint**

The Court next considers Cognex's Motion for Leave to Amend the First Supplemental Complaint. In this motion, Cognex requests permission to file a Second Amended and Supplemental Complaint to add a claim for punitive damages.

Under Minnesota law, a plaintiff may not assert punitive damages in its complaint but must instead later move to amend the pleadings to claim punitive damages. Minn. Stat. § 549.191 (2006); *Olson v. Snap Prods., Inc.*, 29 F. Supp. 2d 1027, 1034 (D. Minn. 1998). A court will grant the motion if it finds prima facie evidence of an entitlement to punitive damages. *Id.* In this context, the term prima facie "does not refer to a quantum of evidence, but to a procedure

for screening out unmeritorious claims for punitive damages." *Thompson v. Hughart*, 664

N.W.2d 372, 377 (Minn. Ct. App. 2003) (citation omitted).

Minnesota Statutes § 549.20 (2006) provides the applicable standard for entitlement to

punitive damages:

(a)     Punitive damages shall be allowed in civil actions only upon clear and
convincing evidence that the acts of the defendant show deliberate
disregard for the rights or safety of others.

(b)     A defendant has acted with deliberate disregard for the rights or safety of
others if the defendant has knowledge of facts or intentionally disregards
facts that create a high probability of injury to the rights or safety of
others and:

(1)     deliberately proceeds to act in conscious or intentional disregard
of the high degree of probability of injury to the rights or safety of
others; or

(2)     deliberately proceeds to act with indifference to the high
probability of injury to the rights or safety of others.

Here, there is a factual dispute as to the falsity of the statements Acacia made regarding

Cognex's interest in purchasing Veritec.  However, in reviewing the evidence, a court "makes no

credibility rulings, and does not consider any challenge, by cross-examination or otherwise, to

the plaintiff's proof." *Berczyk v. Emerson Tool Co.*, 291 F. Supp. 2d 1004, 1008 n. 3 (D. Minn.

2003) (citation omitted).  In support of its business defamation claim, Cognex submits the

deposition testimony of Trista, who testified that Cognex never made an offer to purchase

Veritec or the '078 or '524 patents.  Trista testified that in his discussions with Tran, he told her

that Cognex was not interested in purchasing Veritec and that Cognex would not draft or sign a

letter of intent stating such an interest when it, in fact, had none.  Trista also testified that Cognex

never drafted nor received a letter of intent regarding the purchase of Veritec or its patents.

Cognex also presents the deposition testimony of DeRaimo-Stender, who could not remember

the exact words Tran used, but stated that she understood from Tran that "Cognex was interested in purchasing the patents from Veritec . . . [for] an eight-figure amount."  DeRaimo-Stender testified that she sent emails to prospective licensees/alleged infringers who mentioned being indemnified by Cognex stating that Cognex had "offer[ed] to purchase Veritec's patents."  DeRaimo-Stender testified that she did not attempt to verify Tran's assertion before sending the emails.  When asked whether one of her objectives in mentioning the alleged offer to purchase was "that Cognex was not sincere in its contentions that the patents were not infringed and/or invalid," DeRaimo-Stender answered, "Yes. Or contradictory."  DeRaimo-Stender further testified that her objective was "to encourage [the recipient] to do his own independent review and not rely on the statements of Cognex."

A plaintiff is not required to demonstrate an entitlement to punitive damages per se, but only an entitlement to allege such damages.  *Ulrich v. City of Crosby*, 848 F. Supp. 861, 867 (D. Minn. 1994).  Here, Cognex has met its prima facie burden.  The evidence is clear and convincing, when considered without an assessment of credibility or cross-examination and challenges by Acacia.  *See Berczyk*, 291 F. Supp. 2d at 1008 n.3.  The Court concludes that a jury could determine that Acacia acted with deliberate disregard for the rights of Cognex when it intentionally disseminated false information to Cognex customers about Cognex's interests in purchasing the '078 and '524 patents after Cognex had represented to its customers that these patents were invalid and unenforceable, and that Acacia did so for the purpose of causing injury to Cognex's business reputation and prejudice to Cognex in the conduct of its business.

The Court is not persuaded by Acacia's contentions that Acacia is not responsible for the allegedly defamatory statements of DeRaimo-Stender.  By statute, punitive damages may be awarded against an employer because of an act done by an employee when the employer

9

authorized the doing of and the manner of the acts."  Minn. Stat. § 549.20, subd. 2.  Acacia's

Chief Operating Officer and General Counsel Robert Berman testified that he authorized

DeRaimo-Stender to relay information regarding Cognex's alleged interest in acquiring rights to

the Veritec patents to prospective licensees.  Punitive damages can also be awarded against an

employer "if the employee worked in a managerial capacity and acted in the scope of

employment."  *Muehlstedt v. City of Lino Lakes*, 473 N.W.2d 892, 896 (Minn. Ct. App. 1991)

(citing Minn. Stat. § 549.20, subd. 2(c)).  DeRaimo-Stender testified that she was Vice President

of Licensing for Acacia at the times relevant here and that her job included the negotiation of

licenses on behalf of Acacia on various patent portfolios assigned to her, including the '524

patent.  The emails that she sent to Cognex customers containing the allegedly false statements

were sent in the course of her work for Acacia and were part of her efforts to collect license fees

for Acacia under the patent.

On the basis of the foregoing, the Court concludes that Cognex has sufficiently

demonstrated prima facie evidence of entitlement to punitive damages on its business defamation

claim, and its motion for leave to amend its complaint is granted in that regard.  *See* Minn. Stat. §

549.191 ("[I]f the court finds prima facie evidence in support of the motion, the court shall grant

the moving party permission to amend the pleadings to claim punitive damages.").  However, the

Court rejects the Proposed Second Amended and Supplemental Complaint as submitted by

Cognex because it improperly includes additional amendments that are not part of Cognex's

claim for punitive damages.

Specifically, the First Supplemental Complaint only seeks "presumed, or general,

damages" for Acacia's defamation.  These damages are pleaded in the nature of harm to

Cognex's business reputation and credibility.  However, in the Prayer for Relief of the Proposed

Second Amended and Supplemental Complaint, Cognex states a claim for "special, general and punitive damages" due to Acacia's defamation.  Federal Rule of Civil Procedure 9(g) requires that "[i]f an item of special damages is claimed, it must be specifically stated."  Cognex argues that it should be awarded, as special damages directly and probably caused by Acacia's defamation, its attorney fees, expenses, and costs incurred from the filing of the instant action through to the present.

The Court finds no specific reference in the First Supplemental Complaint to special damages in the form of attorney fees incurred as a result of Acacia's alleged defamation.  Nor are there factual allegations of attorney fees as special damages arising from Acacia's alleged defamation in the Proposed Second Amended and Supplemental Complaint.  It only provides the general reference to special damages in Cognex's Prayer for Relief.

> The plaintiff under a general allegation of damages may recover all such damages as are the natural and necessary result of such injuries as are alleged for the law implies their sequence.  Not every loss which may result from an injury is a natural and necessary result of the injury.  To permit recovery of other or special damages, there must be allegation of the specific facts showing such damages to apprise the defendant of the nature of the claim against him.

*Burlington Transp. Co. v. Josephson*, 153 F.2d 372, 377 (8th Cir. 1946); 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1310 (3d ed. 2004) ("Special damages are those elements of damages that are the natural, but not the necessary or usual, consequence of the defendants' conduct, and typically stem from and depend upon the particular circumstances of the case . . . Pleading special damages is necessary for items that are in addition to the general damages the law normally awards to compensate the plaintiff for the injury sought to be redressed and these items must be pleaded in accordance with Rule 9(g).").

Cognex claims that it is entitled to recover its attorney fees as actual damages in this action because Acacia's defamation left Cognex with no choice other than to see the litigation

through to its full completion.  However, the attorney fees claimed by Cognex are not the proximate and foreseeable consequences of Acacia's allegedly defamatory statements.  Rather, they are the result of the circumstances into which the alleged falsehoods were interjected.  The record establishes that the instant patent litigation was already underway when DeRaimo-Stender made the allegedly false statements to Cognex customers.  The attorney fees accumulated by Cognex's claimed inability to settle the on-going patent infringement case following the allegedly defamatory remarks arose not from Acacia's statements themselves, but due to the fact that the instant litigation had already been commenced on the basis of Cognex's good faith belief that the '524 patent was invalid and unenforceable.  Under these circumstances, the Court concludes that Cognex's attorney fees are not the natural and necessary result of Acacia's allegedly defamatory statements.  They are special damages that must be specifically pleaded pursuant to Rule 9(g).

The Court concludes that Cognex has not pleaded special damages in accordance with Rule 9(g) in either the First Supplemental Complaint or the Proposed Second Amended and Supplemental Complaint, and that Cognex has improperly asserted a new claim for special damages in the Proposed Second Amended and Supplemental Complaint.  Moreover, the time for amending the pleadings has long passed.[3]  Discovery in this case has been closed for more than a year, and the parties' motions for summary judgment have been submitted to and considered by the Court.  Because Cognex did not bring a motion to amend to add a claim for special damages "as soon as reasonably possible" as required by the Pretrial Scheduling Order

---

[3]     The Court notes that due to the requirements of Minn. Stat. § 549.191, the timeliness of a motion to amend to assert a claim for punitive damages is viewed differently.  *See Rosenbloom v. Flygare*, 501 N.W.2d 597, 601 (Minn. 1993) (finding trial judge did not abuse discretion in allowing amendment for punitive damages raised for first time on day of trial).  Thus, Cognex's motion to amend to assert a punitive damages claim is not untimely.

issued by the magistrate judge on February 26, 2007, because Cognex fails to provide good cause for seeking to amend its complaint at such a late date in these proceedings, and because Acacia would suffer undue prejudice in its defense of the defamation claim if an additional claim for special damages were now permitted, the Court denies what it perceives as a request by Cognex to amend the First Supplemental Complaint to assert an additional damages claim for special damages.  *See* Fed. R. Civ. P. 16(b) (providing that a pretrial schedule "may be modified only for good cause and with the judge's consent").  However, for the reasons previously stated, the Court grants Cognex's leave to amend the First Supplemental Complaint to assert a claim for punitive damages.

## C.     Motion for attorney fees

Under 35 U.S.C. § 285 (2000), a court may award reasonable attorney fees to the prevailing party in a patent infringement case where the conduct of the losing party is determined to be "exceptional."  In order for a court to award attorney fees, the court must undertake a two-step inquiry.  *Evident Corp. v. Church & Dwight Co.*, 399 F.3d 1310 (Fed. Cir. 2005).  "The court examines first whether there is clear and convincing evidence that the case is exceptional, and second whether an award of attorney fees to the prevailing party is warranted."  *Id.*  Cognex asserts this is an "exceptional case" and seeks an award of attorney fees pursuant to 35 U.S.C. § 285.  Defendants deny that this case is exceptional and argue that even if it is, an award of attorney fees under section 285 is not warranted under the circumstances presented here.  There is no dispute that Cognex is the prevailing party.  *See Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1183 (Fed. Cir. 1996) ("A party who has a competitor's patent declared invalid meets the definition of 'prevailing party.'").

1.      **Exceptional case**

Cognex may prove the existence of an exceptional case "by showing:  inequitable

conduct before the PTO; litigation misconduct; vexatious, unjustified, or otherwise bad faith

litigation; a frivolous suit or willful infringement."  *Brasseler, U.S.A., L.P. v. Stryker Sales

Corp.*, 267 F.3d 1370, 1377 (Fed. Cir. 2001); *see also Brooks Furniture Mfg., Inc. v. Dutailier

Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005) ("A case may be deemed exceptional when

there has been some material inappropriate conduct related to the matter in litigation, such as

willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during

litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like

infractions."); *Rohm & Haas Co. v. Crystal Chem. Co.*, 736 F.2d 688, 691 (Fed. Cir. 1984)

(stating that an award of attorney fees under section 285 "should be bottomed upon a finding of

unfairness or bad faith in the conduct of the losing party, or some other inequitable consideration

of similar force, which makes it grossly unjust that the winner of the particular law suit be left to

bear the burden of his own counsel fees which prevailing litigants normally bear").  As the party

seeking attorney fees, Cognex bears the burden of proving by clear and convincing evidence that

this case is exceptional.  *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1327 (Fed. Cir.

2003).  Cognex presents two arguments in support of its contention that this is an exceptional

case:  (1) litigation misconduct by Defendants during the course of this litigation, and (2)

inequitable conduct committed by one or more Defendants in procurement of the '078 patent and

during the prosecution of the continuation applications that ultimately issued as the '524 patent.[4]

a.      **Litigation misconduct**

---

[4]      The specific details of Defendants' inequitable conduct are set forth in *Cognex*, 2008 WL
2113661, at *25-33, and are not repeated here unless necessary to the Court's analysis of the
pending motion for attorney's fees.

Cognex contends this is an exceptional case due to litigation misconduct by Defendants during the course of these proceedings.  Cognex alleges five instances of misconduct by one or more Defendants in support of its argument:  (1) Acacia's defamation of Cognex in its continued pursuit of license fees on the basis of the '524 patent when it knew or should have know that the '524 patent was invalid and unenforceable; (2) Defendants' assertion of infringement claims in this action after litigation in a separate case, which was settled by Veritec before trial, demonstrated that the '078 patent was invalid and unenforceable; (3) Defendants' inequitable conduct during the reexamination of the '524 patent by failing to timely disclose to the PTO damaging admissions made by Defendants' own expert; (4) Defendants' failure to preserve critical evidence; and (5) Defendants' filing of questionable, if not frivolous, motions that were calculated to unnecessarily delay resolution and multiply Cognex's litigation costs.  The Court concludes that these claims do not individually or collectively justify a conclusion that this case is an exceptional case due to litigation misconduct by one or more Defendants.

First, Cognex's reliance on defamatory statements by Acacia to demonstrate litigation misconduct is misplaced at this point in time.  The Court has now twice concluded that questions of fact remain regarding the falsity of the statements underlying Cognex's business defamation claim against Acacia.  Second, Cognex's assertion that Veritec settled another lawsuit concerning the '078 patent because it realized the patent was invalid and unenforceable is speculative and not supported by clear and convincing evidence.  *See Stephens v. Tech Int'l, Inc.*, 393 F.3d 1269, 1276 (Fed. Cir. 2004) (indicating that an exceptional case finding is not to be based on speculation or conjecture but upon clear and convincing evidence).  Rather, the record indicates that Veritec settled the case to which Cognex refers prior to any determination of invalidity or unenforceability by the Court.  Moreover, review of the terms of the settlement

agreement establishes that they do not alter or call into question the presumption of validity afforded to the '078 patent at the commencement of the instant action. *See* 35 U.S.C. § 282 (2000) (granting a presumption of validity to patents). Third, Cognex's allegations that Defendants engaged in inequitable conduct during the reexamination of the '524 patent and in the spoliation of evidence were the subject of two motions previously filed by Cognex during the summary judgment phase of these proceedings. The Court denied both motions. Cognex resurrects its prior arguments here in support of its assertion that this is an exceptional case, but they are insufficient to establish Defendants' litigation misconduct by clear and convincing evidence.

Finally, the record does not clearly and convincingly establish improper motive or frivolous filings by Defendants during the course of this lawsuit. Cognex contends Defendants' motion to dismiss was frivolous. The Court disagrees. The Court adopted the magistrate judge's recommendation to grant Defendants' motion in part after its de novo review of the record indicated portions of Defendants' motion were meritorious. Cognex's argument that Defendants filed their motion to stay these proceedings pending the reexamination of the '524 patent only to effectuate delay also lacks merit when the full context of the filing is considered. Specifically, although Defendants' motion to stay was denied, the filing of the motion appears reasonable in light of the granting of a similar motion to stay by the magistrate judge in another case in this District that involved the '524 patent only a few days prior to Defendants' filing in this case. Defendants' explanation that the avoidance of inconsistent rulings motivated their filing of the motion to stay in this action is reasonable under these circumstances.

In sum, viewing the totality of the circumstances through the lens of the Court's knowledge of the twenty-nine months of proceedings in this action to date, the Court concludes

that Cognex has failed to demonstrate clear and convincing evidence of conduct that would

justify a finding that this is an exceptional case due to Defendants' litigation misconduct.  *See*

*L.A. Gear, Inc. v. Thom McAn Shoe Co*., 988 F.2d 1117, 1128 (Fed. Cir. 1993) (indication that

the trial judge is in the best position to determine, in light of the totality of the circumstances,

whether litigation misconduct renders the case exceptional for purposes of § 285)

### b.     Inequitable conduct

Cognex also argues that this is an exceptional case under 35 U.S.C. § 285 because of

Defendants' inequitable conduct before the PTO.  There is no per se rule of exceptionality in

cases involving inequitable conduct.  *Nilssen v. Osram Sylvania, Inc.*, 523 F.3d 1352, 1358 (Fed.

Cir. 2008).  A finding of inequitable conduct "may constitute a basis for an award of attorney

fees under 35 U.S.C. § 285."  *A.B. Chance Co. v. RTE Corp.*, 854 F.2d 1307, 1312 (Fed. Cir.

1988); *see also Agfa Corp. v. Creo Prods., Inc.*, 451 F.3d 1366, 1380 (Fed. Cir. 2006) (finding

Agfa's inequitable conduct rendered the case exceptional); *Basseler*, 267 F.3d at 1386 (holding

that a party may prove the existence of an exceptional case by showing inequitable conduct

before the PTO).  On the other hand, a finding of inequitable conduct does not require a finding

that the case is exceptional.  *Gardco Mfg., Inc. v. Herst Lighting Co*., 820 F.2d 1209, 1215 (Fed.

Cir. 1987) (stating "it has not been held that . . . every instance of inequitable conduct mandates

an evaluation of the case as 'exceptional'").

In the May 19 Order, the Court concluded that the patentees of the '078 patent, including

co-inventor Robert Sant' Anselmo, then Executive Vice President of Veritec, engaged in

inequitable conduct by withholding material information from and making false and incomplete

statements to the PTO examiner during the procurement of the '078 patent, and that this

inequitable conduct tainted the issuance of the '524 patent, which claims priority to the '078

patent.  *See Cognex*, 2008 WL 2113661, at *25-33.  Specifically, the Court determined that the patentees failed to disclose information about public demonstrations of the claimed invention that were made prior to the critical date of the '078 patent.  The Court also determined that the patentees failed to disclose a sale of the claimed invention prior to the critical date of the '078 patent.  The Court concluded that Defendants' explanation for the failure to disclose the prior demonstrations and sale were "implausible."  The Court also concluded that the patentees had knowledge of the withheld information and determined that it was intentionally withheld in an effort to avoid rejection of the proposed patent claims.  The Court determined that the patentees not only failed to provide the examiner with a full record upon which to examine the application for the '078 patent, but that they also knowingly submitted false and incomplete information to the examiner.  In the absence of a credible explanation from the patentees, the Court concluded that an inference of deceptive intent was "inescapable under the facts and circumstances."

Upon finding inequitable conduct by the patentees in the procurement of the '078 patent, the Court, relying on *Rohm & Haas Company*, 722 F.2d at 1572, then determined that the patentees failed to sufficiently cure their inequitable conduct during the prosecution of the '524 patent.  Because the '524 patent application was a continuation of the '078 patent application and the claims of the patents were determined to be sufficiently connected and related, the Court concluded that the uncured inequitable conduct during the procurement of the '078 patent tainted the prosecution of the '524 patent.[5]  Based upon these findings of inequitable conduct that

---

[5]      The Court notes its apparent misidentification of the notification of allowability referred to in the May 19 Order's discussion of the patentees' failure to cure.  Although the Court referred to a "Notice of Allowance" issued by the PTO prior to the patentees' November 17, 1995 submission of an Information Disclosure Statement containing the previously withheld information, the Court recognizes that the formal Notice of Allowance was not issued by the PTO until January 25, 1986.  However, there is no dispute, nor was there at the time of the May 19 Order, that on May 22, 1995, the examiner of the '524 patent application provided the

involved intentional deceit by the patentees before the PTO, the Court concludes that the present case is an exceptional case within the meaning of 35 U.S.C. § 285 due to inequitable conduct before the PTO.  *See Agfa Corp.*, 451 F.3d at 1380; *Evident Corp.*, 399 F.3d at 1316.

### 2.   Attorney fees

Once a court finds a case is exceptional, the court must then determine whether an award of attorney fees is appropriate.  *Forest Labs.*, 339 F.3d at 1328.  A finding of exceptional circumstances does not mandate the award of attorney's fees.  *See Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 815 (Fed. Cir. 1990).  Rather, if a case is declared exceptional, the decision to award attorney fees remains "discretionary and 'permits [a] judge to weigh intangible as well as tangible factors.'"  *Superior Fireplace Co. v. Majestic Prods. Co*., 270 F.3d 1358, 1378 (Fed. Cir. 2001) (quoting *Nat'l Presto Indus., Inc. v. West Bend Co*., 76 F .3d 1185, 1197 (Fed. Cir. 1996)).  These factors include "the closeness of the question, litigation behavior, and any other factors whereby fee shifting may serve as an instrument of justice." *Id*.

It is the court's duty, in awarding attorney fees under section 285, "to refuse to condone behavior that exceeds reasonable litigation tactics." *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1575 (Fed. Cir. 1996).  However, no such behavior has occurred here.  During the course of this litigation, Defendants have vigorously defended their position that the omni-directional three-dimensional orientation component of the inventions of the '078 and '524 patents was not fully developed until after the critical date of the patents.  Although the Court ultimately disagreed with Defendants' assertions during claim construction and at summary judgment, the

---

patentees with an informal *notification of the allowability* of most of the patentees' claims, subject to the filing of a terminal disclaimer by the patentees.  This notification of allowability is also discussed in the May 19 Order, and the Court's conclusion regarding the sufficiency of the patentees' submissions of the withheld material information and Defendants' failure to cure the inequitable conduct during the prosecution of the '524 patent stands unaltered.

Court is satisfied that Defendants offered their arguments in good faith and supported their positions with competent documentary, testimonial, and expert report evidence.

Moreover, the Court's claim construction of certain disputed terms determined the issue of invalidity of the asserted claims of the '524 patent.  The Court's construction of these terms also established the context in which the Court determined that Defendants engaged in inequitable conduct before the PTO by withholding material prior art references during the prosecution of the '078 patent and by intentionally providing material false and misleading statements to the PTO.

In sum, while Cognex seeks an award of attorney fees, expenses, and costs in the amount of $2.6 million, the Court concludes, on the basis of its familiarity with this litigation and the interests of justice, that this is not a case in which an award of attorney fees to the prevailing party is warranted.  *See Gardco*, 820 F.2d at 1215 (citing *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc*., 781 F.2d 198, 201 (Fed. Cir. 1986).  "The purpose of section 285 is to provide discretion where it would be grossly unjust that the winner be left to bear the burden of his own counsel which prevailing litigants normally bear."  *Badalamenti v. Dunham's, Inc.*, 896 F.2d 1359, 1364 (Fed. Cir. 1990) (citation omitted).  Finding no gross injustice in requiring each party to pay the attorney fees incurred in litigating the patent disputes in this action, the Court, in its discretion, declines to award attorney fees to Cognex.

### III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.    Cognex's Motion for Summary Judgment on Count V of Plaintiff's First Supplemental Complaint/Defamation [Docket No. 294] is DENIED.

2.      Cognex's Motion for Leave to Amend the First Supplemental Complaint
        [Docket No. 291] is GRANTED IN PART AND DENIED IN PART.

3.      Cognex shall serve and file a Second Amended Complaint in accordance
        with the substance of this Order.

4.      Cognex's Motion to Declare this an Exceptional Case Pursuant to 35
        U.S.C. § 285 [Docket No. 285] is DENIED.

Dated:  August 7, 2008

                                        s/  Joan N. Ericksen
                                        JOAN N. ERICKSEN
                                        United States District Judge